UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARRY JAKE WALTON,

       Petitioner,

CASE NO. 13-12797
v.                                HONORABLE NANCY G. EDMUNDS

JOHN PRELESNIK,

       Respondent.
_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Harry Jake Walton has filed a *pro se* habeas corpus petition challenging his state convictions for two counts of first-degree criminal sexual conduct. *See* Mich. Comp. Laws § 750.520b(1)(f) (sexual penetration using force or coercion and causing personal injury to the victim). Petitioner alleges in his habeas petition that (1) his sentence is invalid, (2) he was convicted of an offense for which he was never charged or properly arraigned, (3) the state courts failed to uphold the Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296 (2004), and (4) his trial and appellate attorneys were ineffective. Respondent argues in an answer to the petition that Petitioner's claims are procedurally defaulted, not cognizable on habeas review, or meritless. The Court agrees that Petitioner's claims do not warrant relief. Accordingly, the petition will be denied.

# I.  Background

## A.  The Charges, Trial, Sentence, and Direct Appeal

Petitioner was charged in Oakland County, Michigan with two counts of criminal sexual conduct.  The testimony at Petitioner's jury trial in Oakland County Circuit Court established that,

> in the early morning hours of May 13, 2001, [the complainant] was drinking with friends at a bar in downtown Mount Clemens, when defendant approached and began talking to her.  The complainant admitted to engaging in some intimate touching with defendant at first, and leaving the bar with him in his pickup truck.  According to the complainant, the two returned to the bar after "maybe twenty minutes," to find its valet parking service closed, leaving her without access to her car.  Defendant offered to take her home.
>
> According to the complainant, defendant insisted on taking back roads, coming to a stop in a dark area where the two left the truck to urinate.  The complainant testified that, upon returning to the truck, defendant "grabbed the back of my head . . . and shoved it down towards his ... private area," in response to which she ran in distress from the truck to a house close to the road, where no one answered her pounding at the door.  The complainant explained that because she did not know where she was, she allowed defendant to coax her back into his truck, but that she next remembered hitting her head on grass, having been thrown down.  The complainant elaborated that she felt pain in her head from that, and that she next remembered defendant choking her.  According to the complainant, defendant then told her that she would do everything he demanded of her, causing her to fear for her life.  The complainant testified that she submitted to his demand that she remove her pants, upon which defendant forcibly penetrated first her vagina, then her mouth, with his penis.
>
> The complainant testified that when invited to return to defendant's truck, she did so, but with a plan to jump out as soon as she saw a house close to the road, which she in fact did shortly thereafter.  This time, according to the complainant, someone answered her pounding and pleas, and she saw no more of defendant or his truck.
>
> Paul Butterfield testified that, between 2:00 and 3:30 in the morning of May 13, he had returned from work at Meijer when he heard screaming in

> the front yard. Butterfield described opening the door to the complainant, who said that she had been raped and had jumped from a car. Butterfield allowed the complainant into his apartment and he called 911. He gave his address, located in Oxford, in Oakland County.
>
> The defense admitted that sexual relations took place between defendant and the complainant, but maintained that they were entirely consensual.

*People v. Walton*, No. 241760, 2003 WL 22339493, at *1 (Mich. Ct. App. Oct. 14, 2003).

There was additional evidence that, following his arrest, Petitioner stated to the police that he "did everything she said I did" and that he wanted to make a deal with the prosecutor. (Trial Tr. Vol. III, 187, Mar. 7, 2002.) In a subsequent written statement, he wrote: "I did the crimes on [the complainant] as stated on Sunday, 5-13-01, approximately 3:00 a.m., oral intercourse, verbal abuse, slapped, ditched on the roadway, picked up later." *Id.* at 189.

The trial court instructed the jury on aggravated assault as a lesser-included offense, but, on March 8, 2002, the jury found Petitioner guilty, as charged, of two counts of first-degree criminal sexual conduct. The trial court sentenced Petitioner as a habitual offender under Mich. Comp. Laws § 769.10, and as a repeat sexual offender under Mich. Comp. Laws § 750.520f, to two concurrent terms of forty to sixty years in prison. In a direct appeal as of right, Petitioner argued that: (1) the prosecutor failed to establish venue beyond a reasonable doubt, the trial court failed to instruct the jury on venue as an element of the offense, and trial counsel was ineffective for failing to (a) move for a directed verdict for lack of proof of an essential element and (b) object to the trial court's omission of a jury instruction on the element of venue; (2) the trial court deprived him of due process by permitting "other acts" testimony to be admitted in evidence; (3) the trial court erred by refusing to quash evidence of Petitioner's

confession; and (4) the trial court abused its discretion by denying Petitioner's motion for appointment of a DNA expert at county expense. The Michigan Court of Appeals found no merit in these claims and affirmed Petitioner's convictions. *See Walton,* No. 241760, 2003 WL 22339493.

Petitioner raised the same claims and several new issues regarding the sufficiency of the evidence, trial and appellate counsel, and his sentence in an application for leave to appeal in the Michigan Supreme Court. On May 28, 2004, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Walton*, 680 N.W.2d 900 (Mich. 2004).

### B. The First Habeas Petition

On September 23, 2004, Petitioner filed a *pro se* habeas corpus petition in which he claimed that he was improperly sentenced as a habitual offender because neither the jury, nor the trial court, made any findings of guilt on the habitual-offender charge. He also claimed that the trial court ignored the sentencing guidelines. The Honorable George Caram Steeh denied Petitioner's habeas petition on the merits. *See Walton v. McKee*, No. 04-cv-73697 (E.D. Mich. Aug. 22, 2006).

### C. The State Collateral Proceedings

Petitioner filed a motion for relief from judgment in which he claimed that his trial and appellate counsel were ineffective. The trial court denied Petitioner's motion after concluding that Petitioner's claims about trial counsel lacked merit and, therefore, appellate counsel was not ineffective for failing to raise the claims on appeal. The Michigan Court of Appeals denied leave to appeal the trial court's decision, stating that

4

Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Walton*, No. 276161 (Mich. Ct. App. June 20, 2007).

Petitioner appealed to the Michigan Supreme Court, which remanded Petitioner's case to the Court of Appeals in lieu of granting leave to appeal. The court instructed the Michigan Court of Appeals to consider whether (1) Petitioner was denied effective assistance of counsel due to his attorney's failure to object when the trial court did not sentence him under the sentencing guidelines and (2) Petitioner was entitled to post-appeal relief. The supreme court denied leave to appeal in all other respects. *See People v. Walton*, 741 N.W.2d 320 (Mich. 2007).

On remand, the Michigan Court of Appeals concluded that Petitioner's trial attorney was not ineffective, but that Petitioner was entitled to post-appeal relief. The Court of Appeals stated that the sentencing guidelines applied to Petitioner's case, but that it could not determine from the record whether Petitioner's sentence fell within or outside the guidelines. The Court of Appeals remanded the case to the trial court to make that determination and to re-sentence Petitioner if necessary. *See People v. Walton*, No. 276161 (Mich. Ct. App. June 3, 2008).

On October 6, 2008, the trial court applied the sentencing guidelines and re-sentenced Petitioner to imprisonment for thirty-nine to sixty years with credit for 2,702 days. Petitioner appealed his new sentence, but the Michigan Court of Appeals affirmed the sentence and declined to consider Petitioner's claim that the criminal information did not properly charge him with first-degree criminal sexual conduct. The court said that issue was not properly before the court. *See People v. Walton,* No. 289212, 2010 WL 1568495 (Mich. Ct. App. Apr. 20, 2010). Following remand, the

Michigan Supreme Court denied leave to appeal. *See People v. Walton*, 787 N.W.2d 485 (Mich. 2010).

Petitioner filed a motion to quash his conviction and sentence, but the trial court denied his motion without explanation. *See People v. Walton*, No. 2001-178581-FC (Oakland Cnty. Cir. Ct. Aug. 16, 2011). Petitioner subsequently raised his habeas claims in the Michigan Court of Appeals, which denied leave to appeal for lack of merit in the grounds presented. *See People v. Walton*, No. 305956 (Mich. Ct. App. May 7, 2012). The Michigan Supreme Court denied leave to appeal on September 4, 2012, because it was not persuaded to review the issues, *see People v. Walton*, 819 N.W.2d 911 (Mich. 2012), and on October 22, 2012, the state supreme court denied Petitioner's motion for reconsideration. *See People v. Walton*, 821 N.W.2d 565 (Mich. 2012).

**D. The Current Petition and Responsive Pleading**

Petitioner subsequently sought permission from the United States Court of Appeals for the Sixth Circuit to file a second or successive habeas corpus petition. On April 24, 2013, the Sixth Circuit denied the application as unnecessary because Petitioner was challenging a new sentence. *See In re Harry Walton*, No. 12-2486 (6th Cir. Apr. 24, 2013).

On June 26, 2013, Petitioner filed the habeas corpus petition now pending before this Court. Although Respondent contends that some of Petitioner's claims are procedurally defaulted, "a procedural default, that is, a critical failure to comply with state procedural law, is not a jurisdictional matter." *Trest v. Cain*, 522 U.S. 87, 89 (1997). Further, the Court finds it more efficient to proceed directly to the merits of

6

Petitioner's claims than to analyze whether the claims are procedurally defaulted and barred from review. The Court therefore excuses the alleged procedural defaults.

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

7

clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Analysis

#### A. The Sentence

The Court understands Petitioner to be alleging in claim one that the judgment of sentence, which was filed after his re-sentencing, is invalid because it lists Mich. Comp. Laws § 750.520f as the charge. Section 750.520f authorizes state courts to sentence a person to a mandatory minimum sentence of at least five years if the person was convicted of a second or subsequent criminal-sexual-conduct offense. Petitioner does not deny that he had a prior conviction for a sexual-conduct offense. Nevertheless, as the Michigan Court of Appeals recognized in one of its orders, § 750.520f does not "constitute[] a felony unto itself." *Walton*, No. 276161, 2008 WL 2262177, at *2. It is

merely a sentencing enhancement provision. *See id.* The actual statute that Petitioner violated was Mich. Comp. Laws § 520b(1)(f), which is first-degree criminal sexual conduct (sexual penetration of another person under circumstances where the actor causes personal injury to the victim and uses force or coercion to accomplish sexual penetration).

Ideally, both statutes (Mich. Comp. Laws §§ 520b(1)(f) and 750.520f) should have been cited in the judgment of sentence. To the extent there was an error, however, the error was a technical one under state law, and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Although Petitioner alleges that his constitutional right to due process was violated by the alleged error, he had notice of the correct charge months before trial. *See People v. Walton*, No. 01-004009, First Amended Complaint dated May 17, 2001, ECF No. 14-2; *People v. Walton*, Case No. 2001-178581-FH, First Amended General Information filed on November 26, 2001, ECF No. 14-4. And, in a motion to suppress evidence filed one month before trial, defense counsel stated that Petitioner "was arrested on May 14, 2001 and charged with criminal sexual conduct, 1st degree. . . ." ECF No. 14-5. Petitioner also was informed before trial that, if convicted, his sentence could be enhanced under Mich. Comp. Laws § 750.520f because he was previously convicted of criminal sexual conduct. *See People v. Walton*, No. 01-004009, First Amended Complaint dated May 17, 2001, ECF No. 14-2; *People v. Walton*, Case No.

9

2001-178581-FH, First Amended General Information filed on November 26, 2001, ECF No. 14-4.

At trial, the jury was instructed on first-degree criminal sexual conduct, and the jury found Petitioner guilty, as charged, of first-degree criminal sexual conduct. (Trial Tr. Vol. IV, 249-52, 263, Mar. 8, 2002.) Finally, at the re-sentencing, the trial court said there was no question that Petitioner was tried on a charge of first-degree criminal sexual conduct and that there was no confusion on the issue. (Re-sentencing Tr, 8, Oct. 6, 2008.)

Petitioner clearly was charged, tried, convicted, and sentenced for first-degree criminal sexual conduct. Therefore, his right to due process was not violated by the designation of Mich. Comp. Laws § 750.520f as the "charge" in the judgment of sentence. Habeas corpus relief is not warranted on Petitioner's first claim.

## B. The Charged Offense

Petitioner's second claim is similar to his first claim. He alleges that he was convicted of an offense for which he was not charged or properly arraigned, because he was charged in a criminal information, and bound over to state circuit court, under Mich. Comp. Laws § 750.520f. As noted above, § 750.520f is not a felony offense in itself; rather it is a provision for sentencing enhancement. Petitioner therefore argues that, because the criminal information did not charge him with a crime, the state circuit court lacked jurisdiction to try him.

Although Petitioner was tried and convicted of first-degree criminal sexual conduct under Mich. Comp. Laws § 750.520b(1)(f), the first amended criminal information in this case does not include a citation to § 750.520b(1)(f) next to the two

counts of criminal sexual conduct.[1] Nor does the amended criminal information state that Petitioner is being charged with first-degree criminal sexual conduct. Instead, the two counts read as follows:

COUNT 1:   CRIMINAL SEXUAL CONDUCT - SECOND OFFENSE NOTICE

COUNT 2:   CRIMINAL SEXUAL CONDUCT - SECOND OFFENSE NOTICE

Nevertheless, the facts supporting the charges clearly indicate that Petitioner was being charged with first-degree criminal sexual conduct. In both counts of the information, Petitioner is accused of engaging in sexual penetration with the complaining witness under circumstances that caused injury to the victim and made use of force or coercion to accomplish sexual penetration. *See People v. Walton,* Case No. 2001-178581-FH, First Amended General Information, ECF No. 14-4. "It is the statement of facts in an indictment or information and not the statutory citation that is determinative of validity. *United States v. Wyatt*, 518 F. Supp. 1110, 1113 (S.D. Tex. 1981) (citing *United States v. Bethany*, 489 F.2d 91 (5th Cir. 1974)).

Furthermore, any "[e]rror in the citation of the statute which the defendant is alleged to have violated is not a ground for dismissal of an information or for reversal of a conviction if the error did not mislead the defendant to his prejudice." *Id.* Here, as explained in the Court's discussion on Petitioner's first claim, Petitioner was put on notice long before trial that he was being charged with first-degree criminal sexual conduct. Thus, he was not misled or prejudiced by the alleged error in the criminal information.

---

[1] The statute is cited under the HIV "testing notice" of the document.

Even assuming that the charging document was defective, a determination of whether the state trial court was vested with jurisdiction under state law is a function of the state courts, not this Court, *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976), and the jury's verdict on the charged offense rendered harmless any error in the charging document. *United States v. Mechanik*, 475 U.S. 66, 73 (1986). Consequently, habeas relief is not warranted on Petitioner's second claim regarding the charging document and bindover to state circuit court.

## C. *Blakely v. Washington*

Petitioner's third claim alleges that the state courts failed to uphold the mandates of *Blakely v. Washington,* 542 U.S. at 296. Specifically, Petitioner contends that, because criminal-sexual-conduct offenders must register with the State four times a year upon release from prison and for a determinate number of years, *Blakely* is implicated.[2]

The Supreme Court held in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely,* the Supreme Court stated that the "statutory maximum" for purposes of *Apprendi* "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 542 U.S. at 303-04 (emphasis in original).[3]

---

[2] Petitioner is not challenging the scoring of his sentencing guidelines or the length of his incarceration. Rather, he is challenging the necessity of registering as a sex offender after his release from custody.

[3] More recently, the Supreme Court stated in a plurality opinion that facts which "increase the mandatory minimum sentence are . . . elements [of the crime] and must

12

Michigan law requires a person convicted of certain listed offenses to register as a sex offender with the appropriate governmental entity or law enforcement official. The State's Sex Offender Registration Act (SORA) was enacted to assist law enforcement officers and citizens of the State "in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders." Mich. Comp. Laws Ann. § 28.721a. The registration requirements of the law are intended to provide law enforcement and citizens of the State "with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger." *Id.*

Although a sentencing court ordinarily "may consider all record evidence in determining if a defendant must register under SORA," *People v. Althoff*, 760 N.W.2d 764, 773 (Mich. Ct. App. 2008), SORA "does not impose a penalty or punishment as a sanction for a criminal violation." *People v. Golba*, 729 N.W.2d 916, 927 (Mich. Ct. App. 2007). In fact, "there is little or no evidence suggesting that sex offender registration and notification is 'so punitive in form and effect as to render them criminal . . . ." *Lanni v. Engler*, 994 F. Supp. 849, 853 (E.D. Mich. 1998) (quoting *Hudson v. United States*, 522 U.S. 93, 104 (1997) (quoting *United States v. Ursery*, 518 U.S. 267, 290 (1996)). "Rather, SORA is a remedial regulatory scheme furthering a legitimate state interest of protecting the public; it was not designed to punish sex offenders." *Golba*, 729 N.W.2d at 927.

The Court concludes that, because the registration requirement of SORA is not intended to punish sex offenders, a state court's conclusion that an individual must

---

be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 133 S. Ct. 2151, 2158 (2013).

register as a sex offender does not violate the *Apprendi-Blakely* rule. Habeas relief therefore is not warranted on Petitioner's *Blakely* claim.

**D. Trial and Appellate Counsel**

Petitioner alleges in his fourth and final claim that his trial and appellate attorneys were ineffective because they failed to make the argument that Petitioner was not charged, bound over to circuit court, or sentenced for a felony. According to Petitioner, he was charged, bound over, and sentenced under Mich. Comp. Laws § 750.520f, which is a sentencing-enhancement provision, not an independent felony.

An attorney is constitutionally ineffective if "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

The "prejudice" prong requires a petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

The record indicates that Petitioner was charged, bound over, tried, convicted, and sentenced for first-degree criminal sexual conduct, which is a felony. *People v.*

*Nyx*, 734 N.W.2d 548, 582 n.8 (Mich. 2007). Thus, his attorneys were not ineffective for failing to argue that Petitioner was not charged, bound over, or sentenced for a felony.

### IV. Conclusion

Petitioner has not demonstrated that he is in custody in violation of federal law. Further, the state appellate court's conclusion that Petitioner's claims lacked merit was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. The state court's decision certainly was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. The Court therefore denies Petitioner's habeas corpus petition.

### V. Denying a Certificate of Appealability, but Granting Leave to Proceed *In Forma Pauperis* on Appeal

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. Nor would they conclude that Petitioner's claims are adequate to deserve encouragement to proceed further. The Court therefore declines to issue a

15

certificate of appealability on any of Petitioner's claims. Petitioner nevertheless may appeal this Court's decision *in forma pauperis*, because he was permitted to proceed *in forma pauperis* in this Court, and an appeal arguably could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).

Dated: November 20, 2015

s/ Nancy G. Edmunds
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

CERTIFICATION

I hereby certify that a copy of this order was sent this 20th day to parties/counsel Of record by electronic means and/or U.S. Mail.

s/ Carol J Bethel
Case Manager